*799 OPINION OF THE COURT
Frank J. LaBuda, J.
Defendant Carl Colberg[1] stands charged with manslaughter in the first degree under Penal Law § 125.20 (1) and criminal possession of a weapon in the second degree under Penal Law § 265.03 (2)[2] stemming from an incident on April 1, 1999 wherein he allegedly shot and killed his adult son Christopher Colberg in the defendant’s bedroom at the Colberg residence.
On or about June 21, 1999 the defense timely filed a CPL 250.10 notice indicating the defendant would offer evidence at trial of “being battered.”
The defense served the District Attorney with a copy of said notice and, subsequently, provided the District Attorney with the report of their medical expert Dr. John Lucas along with his handwritten notes. The defendant was subsequently examined by the People’s psychiatrist.
This matter now comes on by order to show cause (OSC) of the Sullivan County District Attorney for an order striking the defendant’s CPL 250.10 notice and precluding the testimony of defendant’s medical expert Dr. John Lucas or, in the alternative, substantially limiting the testimony of said medical expert.
This court, following oral argument on the OSC, held a Frye-type hearing pursuant to Frye v United States (293 F 1013 [1923]) to help clarify the medical basis for the proposed testimony of the defendant’s expert.
The only witness to testify at the hearing was the defendant’s psychiatric expert, Dr. John Lucas. The People called no witnesses, expert or otherwise, to rebut the defense witness.
The District Attorney argued at the hearing that:
(1) though New York law does recognize “battered child syndrome” and “battered wife or women’s syndrome” it does not recognize “battered parent syndrome”;
(2) even if said “battered parent syndrome” is applicable herein to bolster the defense theory of justification, medical expert testimony is inadmissible as the jury has the ordinary training and intelligence to evaluate said condition;
(3) defendant’s testimony at the Grand Jury renders battering testimony by defendant’s expert at trial irrelevant.
*800 The defense, through Dr. Lucas, counters that a “battered syndrome” is a gender-neutral syndrome identical to “battered women’s syndrome” and the average juror is not qualified to evaluate said syndrome without the testimony of a medical expert.
Under certain conditions a person may use deadly physical force against another person. (Penal Law § 35.15.)
When a defendant asserts a claim of justification a jury must determine whether his actions were reasonable under the circumstances. However, since the defendant is placing his state of mind at issue the jury’s inquiry into reasonableness must be within the context of defendant’s subjective belief. (See, People v Miller, 39 NY2d 543 [1976]; People v De Sarno, 121 AD2d 651 [2d Dept 1986]; People v Wagman, 99 AD2d 519 [2d Dept 1984].)
Admissibility of expert testimony is in the sound discretion of the trial court (People v Cronin, 60 NY2d 430 [1983]), and it hinges upon three queries: first, is the medical knowledge sufficiently developed so as to permit a reasonable opinion of an expert in the field; second, does the expert’s opinion testimony depend upon medical knowledge or skill not within the ordinary training or intelligence of the average juror; third, is the expert testimony relevant? (See, People v Wernick, 89 NY2d 111 [1996]; People v Taylor, 75 NY2d 277 [1990]; People v Cronin, supra; People v Torres, 128 Misc 2d 129 [Sup Ct, Bronx County 1985].)
New York State courts have held expert testimony admissible in a variety of cases involving “behavioral responses and reactions not usually comprehended by the average juror” such as, “sexual abuse by parent * * * stress and disorientation suffered by Laotian refugees assimilating into American culture * * * psychological reactions of sexually abused child * * * battered child syndrome * * * rape trauma syndrome * * * shaken baby syndrome”; battered wife syndrome; battered women’s syndrome. (People v Banks, 145 AD2d 944, 944-945 [4th Dept 1988] [citations omitted]; see also, People v Torres, supra.)
While it is true that there are no New York reported decisions addressing the admissibility of testimony in situations of “battered person syndrome,” the “battered women’s syndrome” and “battered child syndrome” are recognized.
Sister jurisdictions have recognized the importance of psychiatric testimony in cases such as the instant case. For *801 example, the State of Texas enacted a statute, Texas Penal Code Annotated § 19.06, in 1991 which became the first law in the United States to allow a defendant charged with murder or manslaughter to present evidence of domestic violence committed by the deceased. In 1992, the State of Arizona enacted a statute which provided, in part, that if a defendant was subjected to past domestic violence then the state of mind of a reasonable person shall be determined from the perspective of a reasonable person who has been a past victim of domestic violence. (Ariz Rev Stat Annot § 13-415.) Kentucky, also in 1992, enacted a statute that provided that the imminent danger requirement in its self-defense statute could be inferred from a pattern of past and repeated serious abuse.
Dr. Lucas’ testimony at the aforementioned Frye-type hearing that battered women’s- syndrome is generally accepted in the medical community was unequivocal and uncontradicted by the prosecution. In addition, Dr. Lucas’ testimony that the aforementioned “battered women’s syndrome” is actually a “battered person syndrome” or just “battered syndrome,” as the medical community accepts such syndrome as gender neutral, was also unequivocal and not refuted by the prosecution.
Query: Shouldn’t “battered syndrome” be subject to the same admissibility as “battered women’s syndrome”?
In light of recent statutory enactments in other States, the admissibility of “battered women’s syndrome” in New York State courts and the uncontradicted testimony of Dr. Lucas, that “battered syndrome” is generally accepted in this State’s medical community and that its indices virtually mirror “battered women’s syndrome,” this evidence should not just be limited to women or children.
If the claimed elements of being “battered” are the same regardless of the relationship between the parties or their gender then there is no reason to limit admissibility of expert testimony in a “battered syndrome” case to only women or children.
Under the defense of justification, a person may use deadly physical force against another when he reasonably believes it is necessary to prevent serious injury or death to himself. (People v Torres, 128 Misc 2d 129, supra.)
“The standard for the evaluation of the reasonableness of the defendant’s belief and conduct is not what the ordinary prudent man would have believed or done under the same circum *802 stances. The test is, rather, whether the defendant’s subjective belief as to the imminence and seriousness of the danger was reasonable.” (People v Torres, supra, at 130, citing People v Desmond, 93 AD2d 822.)
Moreover, “It is the defendant’s state of mind and sense of fear which is critical to a justification defense.” (People v Torres, supra, at 130-131, citing People v Miller, 39 NY2d 543, supra.)
“Battered syndrome” evidence may be material and relevant in light of the test of subjective reasonableness of the actions of the defendant and such evidence need be from an expert in order to explain terminology such as “cycle of violence,” “learned helplessness,” “hope for improvement” and “promises to do better” for the jurors whether “battered syndrome” is labeled women’s, child, parent, or just plain “battered syndrome.” The People’s argument that expert battering testimony is irrelevant in light of defendant’s Grand Jury testimony is without merit. The defense is not limited to defendant’s testimony before the Grand Jury.
This court finds that “battered person syndrome” or, preferably, “battered syndrome” is generally accepted in the medical community, that expert testimony is admissible as it is outside the ordinary training and intelligence of the average juror and it is relevant to the within defense of justification in this case.
The order to show cause of the District Attorney seeking an order of this court striking defendant’s GPL 250.10 notice and precluding the testimony of Dr. Lucas (or limiting his testimony) is denied.
The defense may present its expert for purposes of explaining to the jury the symptoms of “battered syndrome” and to express his opinion whether the defendant suffered from said “battered syndrome.” The People will have a full and fair opportunity to cross-examine the defense’s expert and to present opposing views.
The court will charge the jury that they can accept or reject the expert testimony in whole or part.

. Defendant was a New York State Trooper who retired with the rank of Major.

. Per indictment No. 94/99, dated May 19, 1999.