OPINION OF THE COURT
John M. Leventhal, J.
This court has previously held that the defendant may introduce into evidence expert testimony regarding Battered Woman Syndrome (BWS).[1] The facts of this case have been fully set forth in this court’s prior decision (People v Seeley, 179 Misc 2d 42, 44-45). In the prior decision, the court did not set forth the scope of permissible expert testimony when the defendant offers such testimony as proof of self-defense.
In other cases before this court when the People have sought to introduce expert testimony about BWS, the court has limited the scope of such testimony to general information about BWS and prohibited the People from eliciting testimony that the victim/complainant was a battered person. The People now urge the court to rule to limit similarly the defendant’s expert. The court has orally informed both parties that it would permit the defense expert to testify that the defendant was a battered person. This decision explains the court’s reasoning.
The court has also ruled that if the defendant offers evidence that she is a battered person, then the People are entitled to *717 have her examined by an expert of the prosecution’s choosing. This decision also explains this holding.[2]
Evidence — Rules
In general, all evidence which has a tendency to prove a material fact in an action is admissible unless precluded by some evidentiary rule (People v Wilder, 93 NY2d 352, 357; People v Buie, 86 NY2d 501, 509; People v Lewis, 69 NY2d 321, 325). If the probative value of the relevant evidence is outweighed by the prejudice to one of the parties then the relevant evidence should be excluded (People v Alvino, 71 NY2d 233, 242; People v Conyers, 52 NY2d 454, 459; People v Molineux, 168 NY 264). A defendant’s right to cross-examine or confront a witness against an accused impacts on the People’s right to present relevant evidence (Ohio v Roberts, 448 US 56, 63).
Additionally, a defendant’s constitutional right to present evidence that is exculpatory plays an important role in deciding evidentiary issues. This constitutional rule may require the admission of evidence that would ordinarily be inadmissible (Chambers v Mississippi, 410 US 284; People v Carroll, 95 NY2d 375 [2000]).
Because of the principle that a court must weigh the probative value of relevant evidence against the prejudice to the defendant, and the defendant’s constitutional right to confront witnesses and to present exculpatory evidence, the rules of evidence are applied somewhat differently when the People offer relevant evidence than when the defendant offers relevant evidence. Thus, a defendant may have a constitutional right to have reliable hearsay evidence admitted (People v Robinson, 89 NY2d 648), while the People would be precluded from introducing hearsay evidence because of a defendant’s right to confront a witness against him/her (Ohio v Roberts, 448 US 56, supra). Similarly, a court should preclude cross-examination of a defendant about a prior conviction where its probative value is *718 outweighed by the prejudice (People v Sandoval, 34 NY2d 371). The court’s right to preclude a defendant’s cross-examination of a victim/complainant, however, is limited by the constitutional right to confront witnesses (People v Allen, 67 AD2d 558, affd on opn below 50 NY2d 898; see also, People v Carroll, supra). Also, the courts have stated that where the defendant seeks to introduce a declaration that is alleged to be against the declarant’s penal interest the standard for admissibility is “more lenient” than when the People seek to introduce a declaration against penal interest (People v Fonfrias, 204 AD2d 736, 738; People v Campney, 252 AD2d 734, 735).
The rules are different when the People offer expert testimony about BWS than when the defendant offers such evidence (Commonwealth v Kacsmar, 421 Pa Super 64, 75, 78, 617 A2d 725, 730, 732; see also, Schroeder, Using Battered Woman Syndrome Evidence in the Prosecution of a Batterer, 76 Iowa L Rev 553).
Expert Testimony
Expert opinion testimony partially invades the province of the jury to draw conclusions from the facts (People v Miller, 91 NY2d 372, 379; People v Jones, 73 NY2d 427, 431; People v Cronin, 60 NY2d 430, 432). Nonetheless, such testimony is admissible where the conclusions to be drawn from the facts “depend on professional or scientific knowledge or skill not within the range of ordinary training or intelligence” of the average juror (Dougherty v Milliken, 163 NY 527, 533; see also, People v Carroll, 95 NY2d 375, supra; People v Cronin, supra, 60 NY2d, at 432). In determining the admissibility of expert testimony a court must determine the “reason why the testimony is offered” and the helpfulness, relevance and potential for prejudice of the proposed testimony (People v Taylor, 75 NY2d 277, 292; see also, People v Scarola, 71 NY2d 769, 779). Expert testimony that a crime has been committed or to bolster a witness’ credibility is improper (People v Bennett, 79 NY2d 464, 473).
The admissibility of expert testimony is in the sound discretion of the trial court (People v Fratello, 92 NY2d 565, 573).
Thus, the same BWS testimony may be admissible if offered for one reason or purpose, but inadmissible if offered for a different reason or purpose (State v Stringer, 271 Mont 367, 374-376, 897 P2d 1063, 1068-1069, discussing State v Dannels, 226 Mont 80, 734 P2d 188).
*719 Battered Woman Syndrome
Battered Woman Syndrome is not a mental defect or disease (Commonwealth v Conaghan, 48 Mass App Ct 304, 318, 720 NE2d 48, 59; United States v Johnson, 956 F2d 894, 899; Bechtel v State, 840 P2d 1, 7 [Okla]; State v Myers, 239 NJ Super 158, 169, 570 A2d 1260, 1266; cf., People v Erickson, 57 Cal App 4th 1391, 1402, 67 Cal Rptr 2d 740, 747). It is a subcategory or subset of posttraumatic stress syndrome (Campbell v State, 999 P2d 649, 660 [Wyo]; State v Grecinger, 569 NW2d 189, 193 [Minn]; People v Christel, 449 Mich 578, 588, n 15, 537 NW2d 194, 200, n 15; State v Riker, 123 Wash 2d 351, 357, 869 P2d 43, 46; State v Bednarz, 179 Wis 2d 460, 467, 507 NW2d 168, 172; State v Furlough, 797 SW2d 631, 650 [Tenn]). The Battered Woman Syndrome is identified by a series of common characteristics that appear in persons who have been abused for an extended period of time by the dominant figure in their lives (Commonwealth v Pike, 431 Mass 212, 221, 726 NE2d 940, 947; Nixon v United States, 728 A2d 582, 584 [DC]; People v Ellis, 170 Misc 2d 945, 950; People v Humphrey, 13 Cal 4th 1073, 1083-1084, 921 P2d 1, 7, 56 Cal Rptr 2d 142, 148-149; Robinson v State, 308 SC 74, 76, 417 SE2d 88, 90; People v Yaklich, 833 P2d 758, 760 [Colo]; State v Kelly, 97 NJ 178, 193, 478 A2d 364, 371). These characteristics include fear, hyper-suggestibility, isolation, guilt, and emotional dependency, which culminate in a person’s belief that escape from the batterer is impossible (Robinson v State, supra, 308 SC, at 76, 417 SE2d, at 90; Commonwealth v Stonehouse, 521 Pa 41, 62, n 6, 555 A2d 772, 783, n 6, citing Comment, The Battered Spouse Syndrome as a Defense to a Homicide Charge Under the Pennsylvania Crimes Code, 26 Vill L Rev 105).[3]
Violent behavior directed against women often occurs in cycles consisting of three stages[4] (People v Emick, 103 AD2d 643, 654; Robinson v State, supra, 308 SC, at 76, 417 SE2d, at 90; State v Kelly, supra, 97 NJ, at 193, 478 A2d, at 371; Nixon v United States, supra, 728 A2d, at 586; People v Ellis, supra, 170 Misc 2d, at 950; State v Bednarz, supra, 179 Wis 2d, at *720 465-466, 507 NW2d, at 171). During the first stage, there is mostly verbal abuse, with minor physical abuse. Stage two is characterized by an escalation of the abuse until there is an explosive instance where the woman is physically beaten up. Stage three consists of a respite, with no abuse for a short period of time. This cycle continues throughout the relationship with a decrease in the time between the batterings (id.; Commonwealth v Lazarovich, 410 Mass 466, 471, 574 NE2d 340, 343).
Some “[blattering victims respond to the violence they experience with overwhelming terror, shame, and guilt, as well as condemnation due to their inability to leave the situation” (State v Ciskie, 110 Wash 2d 263, 273, 751 P2d 1165, 1170-1171, citing Ferraro & Johnson, How Women Experience Battering: The Process of Victimization, 130 Social Problems 325 [1983]). Other victims attempt to stop the beatings by “hiding, running away, counterviolence, seeking the help of friends and family, going to a shelter, and contacting police” (People v Humphrey, supra, 13 Cal 4th, at 1078, 921 P2d, at 3, 56 Cal Rptr 2d, at 145).
BWS — Use by the People
Most frequently the People seek to introduce expert testimony about BWS to explain a recantation or a prior inconsistent statement (Arcoren v United States, 929 F2d 1235, 1238-1241; People v Ellis, supra, 170 Misc 2d, at 950; Odom v State, 711 NE2d 71, 76 [Ind]; State v Clark, 83 Haw 289, 298, 926 P2d 194, 203; see, People v Hryckewicz, 221 AD2d 990, 991). Similarly, courts have permitted the People to introduce evidence of BWS to explain a victim/complainant’s delay in informing law enforcement agents of a crime (State v Grecinger, 569 NW2d 189 [Minn], supra; State v Ciskie, 110 Wash 2d 263, 751 P2d 1165, supra). However, when permitting the People to introduce expert testimony of BWS for the above purposes, the majority of States have prohibited the People from introducing evidence that the victim/complainant is in fact a battered person (State v Grecinger, supra, 569 NW2d, at 194 [Minn]; Nixon v United States, supra, 728 A2d, at 592 [D.C.]; People v Christel, supra, 449 Mich, at 590-591, 537 NW2d, at 201; Commonwealth v Goetzendanner, 42 Mass App Ct 637, 644, 679 NE2d 240; compare with State v Frost, 242 NJ Super 601, 577 A2d 1282; see also, State v Ciskie, supra, 110 Wash 2d, at 280, 751 P2d, at 1174). The reason given is that there is too much danger that the jury will infer from the BWS testimony that *721 defendant committed the crime charged or that the jury will unduly use BWS testimony to improperly bolster the victim/ complainant’s credibility (id.; see also, People v Humphrey, supra, 13 Cal 4th, at 1088, n 5, 921 P2d, at 10, n 5, 56 Cal Rptr 2d, at 152, n 5). Thus, the courts hold that the probative value of the testimony that the victim/complainant is a battered person is outweighed by the prejudice to the defendant.
As stated earlier, New York also prohibits expert testimony that would establish that defendant committed the charged crime or expert testimony that would unduly bolster a witness’ credibility (People v Bennett, supra, 79 NY2d, at 473). This is why the Court of Appeals did not allow testimony that a victim/ complainant suffers from rape trauma syndrome (People v Taylor, 75 NY2d 277, supra).
In all the previous cases before this court, the court barred the People’s expert from offering an opinion that the victim/ complainant is a battered person, but permitted general testimony about BWS because the People offered the expert’s testimony to explain a recantation or an inconsistent statement or unusual behavior and for that purpose the permitted testimony was sufficient.
This is not to say that should the People offer the testimony of an expert that a victim/complainant is a battered person that the court will always preclude such testimony. Such testimony may be admissible to rebut a claim of mistake or accident or to prove the identity of the perpetrator (People v Henson, 33 NY2d 63, 74; see also, People v Eisenman, 39 NY2d 810; People v Pope, 241 AD2d 756, 758). This type of testimony may also be admissible as corroboration of a crime needing corroboration (Matter of Nicole V., 71 NY2d 112, 121-122).
In conclusion, the scope and admissibility of BWS testimony offered by the People depends on the reason or purpose for which the evidence is being offered and whether the probative value of the evidence outweighs the potential prejudice to the defendant (see, People v Barrett, 189 AD2d 879, 880-881).
BWS — Use by Defendant
Battered Woman Syndrome is not a defense to a criminal act (Boykins v State, 995 P2d 474, 478 [Nev]; Witt v State, 892 P2d 132, 143 [Wyo]; State v Daws, 104 Ohio App 3d 448, 470, 662 NE2d 805, 819; Commonwealth v Miller, 430 Pa Super 297, 313, 634 A2d 614, 622; People v Yaklich, supra, 833 P2d, at 761 [Colo]; State v Koss, 49 Ohio St 3d 213, 217, 551 NE2d 970, 974; State v Hodges, 239 Kan 63, 73, 716 P2d 563, 570). It *722 is evidence of a defendant’s state of mind or evidence relevant to a defense (id.). Among other issues,[5] in New York BWS has been admitted as evidence of justification (People v Ciervo, 123 AD2d 393, 394; People v Hoy, 122 AD2d 618, 619; People v Emick, supra, 103 AD2d, at 644; People v Torres, 128 Misc 2d 129). While evidence of BWS is generally recognized as admissible in cases involving self-defense,[6] the scope of the expert’s testimony has resulted in divergent views.
A few States prohibit a defense expert from testifying that defendant is a battered person (Boykins v State, supra, 995 P2d, at 479 [Nev]; People v Wilson, 194 Mich App 599, 604-605, 487 NW2d 822, 825; State v Burtzlaff, 493 NW2d 1, 5 [SD]; State v Hennum, 441 NW2d 793, 799 [Minn]). These States hold that expert testimony that defendant is a battered person impinges on the jury’s right to determine the ultimate facts. Further, it is felt that general information about BWS is sufficient for the trier of fact to come to a conclusion about the reasonableness of a defendant’s beliefs or fears regarding the potential imminency of injury.
Many States permit or require that the trial court allow a defense expert to testify that a defendant is a battered person (State v Palmer, 2000 WL 311916, 2000 Ohio App LEXIS 1247 [Ohio Ct App, Mar. 28, 2000, Lazarus, J.]; Bishop v State, 271 Ga 291, 293, 519 SE2d 206, 208; State v Kelly,[7] supra, 97 NJ, at 207, 478 A2d, at 378; State v Hickson, 630 So 2d 172 [Fla]; Witt v State, supra, 892 P2d, at 138 [Wyo]; State v Pisciotta, 968 SW2d 185, 189 [Mo]; State v Janes, 121 Wash 2d 220, 240-241, 850 P2d 495, 505-506; Commonwealth v Craig, 783 SW2d 387, 389 [Ky], overruled on other grounds Dyer v Commonwealth, 816 SW2d 647 [Ky]; People v Humphrey, supra, 13 Cal 4th, at 1079, 921 P2d, at 4, 56 Cal Rptr 2d, at 145; see also, State v Steele, 178 W Va 330, 336-337, 359 SE2d 558, 564-565, and cases cited therein). Some of these States have statutes that authorize such testimony. Other States believe that defendant has a constitutional right to present all reliable *723 and relevant testimony. These States find that expert testimony that defendant is a battered person is a material fact beyond the ken of the ordinary juror. These States hold that because a jury must determine whether a defendant reasonably believed that the victim is about to use physical force, they must have expert testimony that a defendant is a battered person. This expert testimony is relevant to a defendant’s subjective belief of the victim’s threatened use of physical force, as well as to a defendant’s subjective belief that the use of physical force against the defendant is imminent.
It is important to remember that New York does not bar testimony by an expert regarding the “ultimate question” provided that such expert testimony is beyond the ken of the ordinary juror (People v Carroll, 95 NY2d 375, supra; People v Cronin, supra, 60 NY2d, at 432; People v De Sarno, 121 AD2d 651, 654). Thus for this reason the objection of the few States that bar such testimony is not valid in New York.
New York’s justification or self-defense law, like the many States which permit expert testimony that defendant is a battered person, has both a subjective and an objective element (People v Goetz, 68 NY2d 96, supra). This requires the jury to place itself figuratively in the defendant’s shoes and to determine the reasonableness of the defendant’s belief from the facts and circumstances as the defendant perceived them (People v De Sarno, supra, 121 AD2d, at 653; People v Montanez, 118 AD2d 414, 416). In order to determine what constituted “defendant’s shoes,” the jury must know whether or not a defendant is a battered person.
This court therefore ruled that defendant’s expert will be permitted to testify that defendant is a battered person (People v De Sarno, supra, 121 AD2d, at 654-655;[8] People v Colberg, 182 Misc 2d 798, 802).[9]
Ordering Defendant to Undergo Psychiatric Examination by People’s Expert
One State has prohibited the People from examining a defendant who has given notice that testimony regarding BWS will be offered at trial as part of a self-defense claim (State v Hennum, 441 NW2d 793 [Minn], supra). The underlying rationale of the case is that since the defense expert will only testify *724 to the general characteristics of BWS and not that the defendant is a battered person, an examination of defendant is unwarranted. The court reasoned that the People are not required to rebut that defendant is a battered person, because no such testimony will be permitted.
Many States have required a defendant to undergo psychiatric evaluation by a People’s expert when a defendant gives notice that there is an intent to introduce expert testimony regarding BWS to establish self-defense. (State v Hess, 252 Mont 205, 210-214, 828 P2d 382, 386-388; State v Briand, 130 NH 650, 652-657, 547 A2d 235, 237-240; State v Myers, supra, 239 NJ Super, at 169-170, 570 A2d, at 1266; State v Manning, 74 Ohio App 3d 19, 24-25, 598 NE2d 25, 28; State v Hickson, 630 So 2d 172 [Fla], supra; Bechtel v State, supra, 840 P2d, at 9 [Okla].) The theory of these cases is that since defendant’s state of mind is an issue in the case, the People have a right to rebut any testimony offered by defendant on such issue. The courts further hold that defendant, by placing his/her state of mind in issue, waives all statutory and constitutional rights or privileges.[10]
In New York, CPL 250.10 (2) requires that a defendant serve notice of intent to present psychiatric evidence within 30 days of pleading not guilty. Once the People receive such notice, CPL 250.10 (3) authorizes the prosecution to make a motion for an order requiring defendant to submit to an examination by a psychiatrist selected by the People. CPL 250.10 (1) defines psychiatric evidence as evidence of a “mental disease or defect.” Earlier in this opinion the court has stated that from a scientific view BWS is not a mental disease or defect. While this has been the finding of the scientific community, courts have broadened the definition of “mental disease or defect” contained in CPL 250.10 (People v Rossakis, 159 Misc 2d 611, 614) and included any mental infirmity or “trauma syndrome” (People v Berk, 88 NY2d 257, 265; see also, People v Kruglik, 256 AD2d 592, 593). As stated earlier BWS is a subset or subcategory of posttraumatic stress syndrome and thus is a “trauma syndrome” within the definition of CPL 250.10 (1) (People v Rossakis, 159 Misc 2d 611, supra; see also, People v Fratt, 146 Misc 2d 77).
*725 In People v Herrera (219 AD2d 511, 512), the Court held that it was not an abuse of discretion to preclude defendant’s expert from testifying about BWS, inter alia, because “defendant failed to cooperate with the prosecution’s psychologist.” Apparently, the Appellate Division, First Department, felt that the People had a right to have their expert examine a defendant when testimony about BWS is being presented at trial.
Even if the court felt that BWS is not covered by the definition of “mental disease or defect” in CPL 250.10, the court has the inherent power to order a defendant to submit to an examination by the People’s psychiatrist (People v Segal, 54 NY2d 58, 65; People v DelRio, 220 AD2d 122, 128; People v Atwood, 101 Misc 2d 291). This court would exercise its inherent power to provide fairness and equity to the People by permitting an examination of the defendant.
For these reasons the court ruled that if the defendant intends to introduce evidence that she is a battered person then the People will have the right to have her examined by an expert of their choice.
The court notes that under this decision the defendant is now required to comply with CPL 240.30 (1) (a) and to turn over to the People any and all documents or reports prepared by the defendant’s expert concerning the examination of the defendant as a person suffering from BWS.

. The court realizes that this is a misnomer. The syndrome applies to men as well as to women and to individuals who are not married. Some courts prefer Battered Person Syndrome or Battered Syndrome. Since most courts use the phrase Battered Woman Syndrome this court will also continue to use it.

. Many of the cases found by this court were found through examining the citations in Annotation, Admissibility of Expert Testimony Concerning Domestic-Violence Syndromes to Assist Jury in Evaluating Victim’s Testimony or Behavior (57 ALR5th 315), and Annotation, Admissibility of Expert or Opinion Evidence of Battered-Woman Syndrome on Issue of Self-Defense (58 ALR5th 749). A huge resource for case law in this area was also found in Parrish, Trend Analysis: Expert Testimony on Battering and its Effects in Criminal Cases (11 Wis Women’s LJ 75). While the cases cited therein were extremely helpful, the court does not agree with the author’s interpretation of all those cases. Many other articles and law journals were examined by the court.

. See, Battered Women: A Perspective on Injustice, 1 Cardozo Women’s LJ 1 (1993).

. See, Walker, The Battered Woman (1979); but see, Digirolamo, Myths and Misconceptions About Domestic Violence, 16 Pace L Rev 41 (1995), and Toffel, Crazy Women, Unharmed Men, and Evil Children: Confronting the Myths About Battered People Who Kill Their Abusers, and the Argument for Extending Battered Syndrome Self-Defenses to All Victims of Domestic Violence, 70 S Cal L Rev 337 (1996).

. BWS may be evidence in a child neglect case, evidence of coercion, relevant to sentence considerations, and may be relevant in a divorce proceeding. The use of BWS is only limited by the imagination of counsel.

. The author of Trend Analysis: Expert Testimony on Battering and its Effects in Criminal Cases (11 Wis Women’s LJ 75) asserts that 90% of the States permit evidence of BWS in cases in which defendant claims self-defense.

. The Court of Appeals in People v Goetz (68 NY2d 96, 113) cited Kelly (supra) in support of its adoption of the subjective-objective test in New York for the justification defense.

. This was apparently permitted by the lower court in De Sarno (supra).

. In Colberg (supra), the court announced that it would permit such testimony without discussing its rationale.

. It is interesting to note that some cases have required a victim/ complainant to undergo examination by defendant’s expert, where the People offer BWS testimony to explain the actions of a victim/complainant (State v Doremus, 2 Neb App 784, 787-791, 514 NW2d 649, 651-654, and cases cited therein).